IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| BRYAN BLOUNT,<br>AIS # 225319, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:18-CV-970-WHA-CSC |
| | ) | |
| COMMISSIONER CULLIVER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

**I.      Introduction[1]**

Plaintiff Bryan Blount, an inmate incarcerated at the Fountain Correctional Facility in Atmore, Alabama, filed pro se this civil rights action under 42 U.S.C. § 1983 alleging certain violations of his federally protected rights while incarcerated in Elmore Correctional Facility and Draper Correctional Center, located in Elmore, Alabama.  Doc. 6.  Plaintiff brings suits against the following Defendants: (1) Associate Commissioner for Operations, Grantt Culliver; (2) Correctional Captain, Charles McKee; (3) Warden Joseph Headley; (4) Warden Mary Cooks; (5) Classification Review Analyst, Vivian Ollison;[2] and (6) Assistant Director of Classifications, Angie Baggett.  *Id*. at 1; *see also* Doc. 38 at 1-3.  For relief, Plaintiff seeks injunctive and monetary relief.  Doc. 6 at 4.

Defendants filed an answer, special report, and supporting affidavits and evidentiary materials addressing the claims in the complaint.  Docs. 37, 38.  In these documents, Defendants deny they acted in violation of Plaintiff's constitutional rights.  Upon receipt of Defendants' special report, the Court issued an order directing Plaintiff to file a response.  The order advised Plaintiff his response should be supported by sworn affidavits or other appropriate evidentiary materials. Doc. 44 at 2.  The order further cautioned Plaintiff that unless "sufficient legal cause" is shown within ten days of entry of this order "why such action should not be undertaken, . . . the court may at any time [after expiration of the time for his filing a response] and without further notice to the parties (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any

---

[1]      All documents and attendant page numbers cited herein are those assigned by the Clerk in the docketing process.

[2]      In their special report, Defendants clarify that Vivian Ollison is Plaintiff's named Defendant, Vivian McQueen. *See* Doc. 38 at 3, n. 2.

response as allowed by this order, rule on the motion in accordance with the law." *Id*. Plaintiff responded to Defendants' report. Doc. 46. This case is now pending on Defendants' motion for summary judgment. Upon consideration of such motion, the evidentiary materials filed in support thereof, and Plaintiff's opposition, the Court concludes that Defendants' motion for summary judgment is due to be GRANTED.

## II.    Standard

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law." *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing the non-moving party has failed to present evidence to support some element on which it bears the ultimate burden of proof. *Id.* at 322-324; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party could not prove his case at trial).

When Defendants meet their evidentiary burden, as they have, the burden shifts to Plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ."); *see also Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (holding that the court should consider facts pled in a plaintiff's sworn complaint when considering summary judgment). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable factfinder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263. The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable

. . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986); Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice . . . ." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Only disputes involving material facts are relevant, materiality is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248. However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. At the summary judgment stage, this Court should accept as true "statements in [Plaintiff's] verified complaint, [any] sworn response to the [Defendants'] motion for summary judgment, and sworn affidavit attached to that response[.]" *Sears v. Roberts*, 2019 WL 1785355, *3 (11th Cir. April 24, 2019); *see also United States v. Stein,* 881 F.3d 853 (11th Cir. 2018) (holding that a plaintiff's self-serving and uncorroborated, but not conclusory, statements in an affidavit or deposition may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [plaintiff's] sworn statements are self-serving, but that alone does not permit us to disregard them at the summary judgment stage. . . . 'Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.'"). However, general, blatantly contradicted and merely "[c]onclusory, uncorroborated allegations by a plaintiff in [his verified complaint or] an affidavit or deposition will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (holding that conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the court, a *pro se* litigant does not escape the burden of sufficiently establishing a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, a plaintiff's *pro se*

status alone does not mandate this court disregard elementary principles of production and proof in a civil case. Here, Plaintiff fails to demonstrate a requisite genuine dispute of material fact to preclude summary judgment on his claims against Defendants. *See Matsushita*, 475 U.S. at 587.

### III.   Factual Background

By way of overview, Plaintiff commenced this pro se action for alleged violations of his federally protected constitutional rights while confined in Elmore Correctional Facility and Draper Correctional Center. Doc. 6. Plaintiff asserts, Defendants falsely accused him of assaulting now-deceased inmate Billy Smith ("Smith"), imposed administrative disciplinary sanctions against Plaintiff for the assault at a procedurally deficient hearing, and wrongfully reclassified Plaintiff to close custody based upon the improper disciplinary sanctions. Doc. 6 at 2-3, 5-6. Plaintiff asserts Defendants violated his due process rights and subjected Plaintiff to cruel and unusual punishment. *Id*.

Plaintiff's claims stem from the following facts, viewed in the light most favorable to Plaintiff:

In October 2017, Plaintiff was transferred to Elmore Correctional Facility ("ECF"). Doc. 38-14 at 2. Smith was also incarcerated at ECF. Doc. 38-1 at ¶ 9. On November 13, 2017, blurred video from inside dormitory A-2 at ECF shows an altercation between inmates. *See* Docs. 39-1, 39-2 at 17:46. William Favor, Supervisory Agent with the Alabama Department of Corrections' ("ADOC") Investigations and Intelligence Division, investigated this incident and later determined, "[a]fter exchanging blows in the bed area of the dormitory, Smith ran to the front door of the dorm with [Plaintiff] and another inmate in pursuit. At the front of the dorm, [Plaintiff] struck Smith multiple times, at least once in the head area, causing Smith to fall and strike his head on the concrete floor." Doc. 38-1 at ¶ 11; *see also* Doc. 38-6 at 1.

After Smith hit his head, he was "taken to the shift office where, witnesses allege, correctional officers mistreated Smith by slapping, punching, and strapping him to a gurney." Doc. 38-1 at ¶ 13. The officers then delayed getting Smith medical treatment. *Id*. Eventually Smith was taken to a hospital, where he was treated for a fractured skull and a large hematoma. *Id*. at ¶ 14. On November 30, Plaintiff was transferred to Draper Correctional Center ("DCC"). Doc. 38-14 at 2.

On December 8, Plaintiff was personally served a copy of a disciplinary report regarding the November 13 incident. Doc. 38-6 at 5. According to the report, Plaintiff was charged with violating Rule 906 – Assault of an Inmate, pursuant to Administrative Regulation # 403. *Id*. The report asserted that Correctional Lieutenant W.M. Burks III ("Burks") was the arresting officer. *Id*. Pursuant to the report,

> On November 30, 2017, at approximately 9:00 a.m., [Burks] received information that [Plaintiff], assaulted inmate [Smith]…, on November 13, 2017. The information was

4

received from several confidential sources. The confidential sources have been used several times before. The information provided in the past has been truthful. Other information has been received to corroborate the confidential sources' given information. The information uncovered during the investigation has not given the confidential sources a reason to lie. The information from the confidential sources is reliable.

*Id*. The report further shows Plaintiff wished to present three witnesses at his hearing. *Id*. One day after Plaintiff was served the disciplinary report, Smith died from his injuries. Doc. 38-1 at ¶ 15.

On December 14, a hearing was held at DCC on the Plaintiff's charge of assault before Hearing Officer Defendant McKee. Doc. 38-6 at 5. Plaintiff pleaded not guilty. *Id*. At the hearing, Defendant McKee heard Burks' testimony. *Id*. at 5-6. Burks testified that he used a confidential source and that this source (1) was used in the past; (2) was present at the November 13 incident; (3) identified Plaintiff as the suspect; and (4) has been used approximately ten times in the past. *Id*. at 6. Plaintiff testified that he did not assault Smith and requested three witnesses to testify. *Id*. All three witnesses declined to appear voluntarily and, in their provided written statements, indicated that they had no direct knowledge of the November 13 incident. *Id*.

Pursuant to the report, Defendant McKee found that Burks received his information from a reliable source. *Id*. In finding Plaintiff guilty, Defendant McKee based his conclusion on the following findings of fact:

> [Defendant McKee's] findings are based on the sworn testimony of [Burks] who stated under oath that his reliable sources did provide credible information that [Plaintiff] did assault [Smith]. [Burks'] sources have been used in the past approximately 10 times, were present at the time of the incident, have been proven reliable in the past. Also, [Burks'] sources gave him no reason to blieve [sic] they were giving false information. [Plaintiff] did have witnesses listed. However, they voluntarily declined to attend [the] hearing but did provide written statements. Written statements presented did not support [Plaintiff's] not guilty plea. Inmate[s] listed as witnesses had no direct knowledge of the incident. Furthermore, [Plaintiff] did present questions for Arresting Officer and Witnesses. However, [Defendant McKee] believes questions were not a credible enough defense to support [Plaintiff's] not guilty plea.

*Id*. Defendant McKee recommended the following sanctions: (1) loss of canteen privileges for 45 days, as of 12/21/2017; (2) loss of telephone privileges for 45 days, as of 12/21/2017; and (3) loss of visiting privileges for 45 days, as of 12/21/2017. *Id*. Defendant McKee also recommended disciplinary segregation for 45 days and a custody review. *Id*. at 7. The report clarified that Plaintiff was: (1) positively identified as the inmate who violated the rule; (2) given written notice of the charges at least 24 hours prior to the hearing; (3) able to attend the hearing; (4) able to call three witnesses; (5) allowed to prepare questions for the witnesses; and (6) provided ADOC assistance, if requested or warranted.

*Id*. at 7.  The report also, clarified, the hearing was held within ten days from the date Plaintiff was served.  *Id*.  DCF Warden, Defendant Cooks, approved the report on December 21, 2017.  *Id*.

Plaintiff was served with the report on December 27 (*id*.) and received a "24 hour advance notification of pending reclassification," informing Plaintiff, on or after December 28, 2017, he will meet with a reclassification team to be considered for a change in custody or institutional assignment due to Plaintiff's "negative behavior while assigned to Draper CF in Medium/SL IV custody."  *Id*. at 9.  The notice further noted that, Plaintiff "received a disciplinary for rv # 906-assault on an inmate," that the assaulted inmate was transported to a hospital due to serious injury, and that the assaulted inmate died.  *Id*.  As a result of the assault, the notice asserted that Plaintiff no longer met the requirements for medium custody and that his custody "may increase up to Close. . . ."  *Id*.  Plaintiff waived his right to a 24-hour advance notification, declined to call any witnesses, and a hearing was held on Plaintiff's reclassification.  *Id*. at 9-10.  Following this hearing, Plaintiff was placed in "Close/V" custody.  *Id*. at 10.  Defendants Cooks and Ollison approved Plaintiff's reclassification into close custody.  *Id*. at 11.  That same day, Plaintiff was transferred to Kilby Correctional Center ("KCC").  Doc. 38-14 at 1.

On June 16, 2018, Plaintiff filed a petition for writ of certiorari to the Circuit Court of Montgomery County, in which he challenged the hearing held on December 14, 2017.  Doc. 38-8.  In his petition, Plaintiff argued, *inter alia*, he was found guilty notwithstanding there being no evidence presented at the hearing, he was wrongfully denied his right to present witnesses, and the hearing lacked an impartial tribunal.  *Id*. at 2.  Plaintiff later amended his petition and argued "he was denied due process because 'the [Defendant McKee] used arbitrary and capricious measures to find [him] guilty of assault on an inmate at a disciplinary hearing where the victim of the alleged incident was dead.  Therefore, [he] was arbitrarily and capriciously found guilty of murder.'"  Doc. 38-9 at 2-3.

While his case was pending before the Circuit Court, on September 18, 2018, Defendant Baggett reduced Plaintiff's custody from close to "medium/general population."  Doc. 38-6 at 12.  This reduction was in error and due to Defendant Baggett's oversight that the victim Plaintiff assaulted, died.  Doc. 38-7 at 2.  Plaintiff was transferred to St. Clair Correctional Facility ("SCCF") on September 24, 2018 (Doc. 38-14 at 1) and shortly thereafter received notice that his reduction in custody was, in error, and that Plaintiff should remain in close custody because his assaultive behavior resulted in death.  Doc. 38-6 at 14.  Plaintiff waived his 12-hour notice, and a hearing was held on Plaintiff's reclassification from medium custody back to close custody.  *Id*. at 15.  Following the hearing, Plaintiff was returned to close custody to complete his mandatory 30-month term for "assaultive behavior resulting in the death of a victim."  *See id*. at 14; *see also* Doc. 38-7 at 2.

On October 15, 2018, the Circuit Court dismissed Plaintiff's petition and Plaintiff timely appealed. Doc. 38-9 at 3. Plaintiff subsequently filed this civil action on November 16, 2018. Doc. 1. On May 17, 2019, the Court of Criminal Appeals affirmed the Circuit Court's dismissal and reasoned, because Plaintiff "did not suffer the deprivation of any recognized liberty interest, the protections of due process are not implicated in this case. Thus, the circuit court did not err when it dismissed [Plaintiff's] petition for a writ of certiorari."[3] Doc. 38-9 at 6. A few months later, in July 2019, following the investigation into Smith's death by Agent Favor, an indictment was returned in the Circuit Court of Elmore County, charging Plaintiff and former Alabama Department of Corrections ("ADOC") Officer Jeremy Singleton, with manslaughter. Doc. 38-1 at 5-10. On September 8, 2021, the Elmore Circuit Court dismissed the manslaughter charges against both Plaintiff and Singleton. *See State of Alabama v. Blount*, case no: CC-2019-000581.00, Doc. 82 (Sept. 8, 2021).

As of the date Plaintiff filed his response to Defendants' special report (October 4, 2019), Plaintiff was in close custody for 22 months. Doc. 46 at 13.

Additional facts are set forth as necessary.

## IV.    Discussion

Plaintiff's amended complaint asserts Defendants falsely accused him of assaulting now-deceased Smith, imposed administrative disciplinary sanctions against Plaintiff for the assault at a procedurally deficient hearing, and wrongfully reclassified Plaintiff to close custody based upon the improper disciplinary sanctions. Doc. 6 at 2-3, 5-6. Specifically, under Ground One, Plaintiff asserts Defendant McKee "made an Arbitrary and Capricious decision when he found me guilty of assault on an inmate…at a disciplinary hearing in which No-Evidence was presented." *Id.* at 3. Under Ground Two, Plaintiff argues Defendants Culliver, Baggett, Ollison, Headley, Cooks, and McKee subjected Plaintiff to cruel and unusual punishment when they used "the prison disciplinary and classification process to conceal the fact that ADOC officers assaulted and killed inmate [Smith]." *Id.*

Defendants assert, *inter alia*, Plaintiff's amended complaint fails to state a claim, Plaintiff's claims are barred by res judicata, Defendants are entitled to immunity in both their official and individual capacities, and Defendants cannot be held liable on the basis of *respondeat superior* liability. Doc. 37.

---

[3]    On August 23, 2019, the Court of Criminal Appeals overruled Plaintiff's application for rehearing. Doc. 38-10.

### A.    Sovereign Immunity

To the extent Plaintiff sues Defendants in their official capacity, they are entitled to sovereign immunity from monetary damages.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied. Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (citation and quotation marks omitted).  Thus, a state official may not be sued in his official capacity unless the State has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14.  The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849.  "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence*, Ala., 916 F.2d 1521, 1525 (11th Cir. 1990)).

In light of the foregoing, Defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacity.  *Selensky*, 619 F. App'x at 849; *Jackson v. Georgia Department of Transportation*, 16 F.3d 1573, 1575 (11th Cir. 1994).

### B.    Res Judicata

Defendants maintain that Plaintiff has already unsuccessfully litigated the issues he presents in the amended complaint, and therefore, his claims are barred by the doctrine of res judicata.

Claim preclusion, or res judicata, bars a subsequent claim when a final judgment has been entered on the merits of the same cause of action in a prior lawsuit between the parties. *Taylor v. Sturgell*, ___ U.S. ___, 2008 WL 2368748 *9 (June 12, 2008).  Therefore, "a party who has had one fair and full opportunity to prove a claim and has failed in that effort should not be permitted to go to

trial on the merits of that claim a second time." *Blonder-Tongue Labs. Inc., v. University of Illinois Foundation*, 402 U.S. 313, 324-35 (1971) (quoting *Bruszewski v. United States*, 181 F.2d 419 (1950)).

Two causes of action are the same for claim preclusion purposes when the following four elements are satisfied: (1) there is a prior judgment on the merits in the first action, (2) the prior decision is rendered by a court of competent jurisdiction, (3) there is substantial identity of the parties to both actions or those in privity with them, and (4) the same causes are presented in both cases. *Hart v. Yamaha-Parts Distributor, Inc.*, 787 F.2d 1468, 1470 (11th Cir. 1986); *Equity Res. Mgmt., Inc. v. Vinson,* 723 So.2d 634, 636 (Ala. 1998).

In June 2018, Plaintiff filed a petition for writ of certiorari to the Circuit Court of Montgomery County. Doc. 38-8. In his petition, Plaintiff unquestionably asserted Ground One in his now-pending action. It does not appear, however, that Plaintiff asserted any Eighth Amendment violations as he now asserts under Ground Two. Rather, his petition asserted solely due process violations. And while the Court of Criminal Appeals indeed held that "[n]one of the 'deprivation[s] suffered' by [Plaintiff] in this case are recognized liberty interests[,]" this Court nonetheless finds Plaintiff's second ground was not asserted in the petition to bar the claim under this doctrine.

In any event, even if the Court found Ground Two to be asserted in Plaintiff's prior petition, res judicata is not applicable here because Defendants have failed to establish identity of the parties which is an essential element of res judicata. *See Hart*, 787 F.2d at 1470. According to the evidentiary material before the Court, Plaintiff sued the "Alabama Department of Corrections," in his state court petition. *See* Doc. 38-9. The defendants remaining in the instant lawsuit are Grantt Culliver, Charles McKee, Joseph Headley, Mary Cooks, Vivian Ollison, and Angie Baggett. Although Defendants argue that they are in privity with the party who litigated the former action, the Court notes that there is a lack of clarity regarding the capacity in which the parties were sued. Plaintiff specifically states in the instant case that he sues Defendants in their official and individual capacities (Doc. 6 at 2), but his state court action is silent in this regard. This is an important consideration as neither identity nor privity exists when a party is sued in his official capacity and then sued later in his individual capacity. *See Andrews v. Daws*, 201 F.3d 521, 526 (4th Cir. 2000) ("a government official in his official capacity is not in privity with himself in his individual capacity for purposes of res judicata."). In light of this uncertainty, the Court finds that claim preclusion does not apply to this action.

### C. Qualified Immunity

In response to Plaintiff's allegations, Defendants argue they are entitled to qualified immunity from damages in their individual capacities. Qualified immunity offers complete protection from civil

damages for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability but immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (quotation marks and citation omitted). To receive qualified immunity, the public official must first prove he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). There is no dispute that Defendants were acting within the course and scope of their discretionary authority when the conduct about which Plaintiff complains occurred. Plaintiff must, therefore, allege facts that, when read in a light most favorable to him, show Defendants are not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To satisfy his burden, Plaintiff must show two things: (1) that a defendant committed a constitutional violation and (2) that the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. . . . In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citations and quotation marks omitted) (alteration in original). "Clearly established law" means (1) "a materially similar case has already been decided"; (2) "a broader, clearly established principle that should control the novel facts of the situation"; or (3) "the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary." *Gaines v. Wardynski*, 871 F.3d 1203, 1208-09 (11th Cir. 2017) (citations omitted). The controlling authority is from "the Supreme Court of the United States, the Eleventh Circuit, or the highest court in the relevant state." *Id.* at 1209. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citations and quotation marks omitted). The Eleventh Circuit "has stated many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Gaines*, 871 F.3d at 1210 (citations and quotation marks omitted). "Exact factual identity with the previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citation omitted). If a plaintiff cannot establish both elements to satisfy his burden, the defendants are entitled to qualified immunity, and the court may analyze the

elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (*citing Pearson*, 555 U.S. at 241-42).

**D.    Section 1983 Claims**

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. In relevant part, § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

Plaintiff's amended complaint asserts he was found guilty of assault and placed in close custody notwithstanding there was no evidence presented at his December 2017 hearing, that Plaintiff was entitled to due process before being placed in close custody, and that Defendants concealed evidence that ADOC officials killed Smith. Plaintiff therefore alleges Defendants violated his Fourteenth Amendment due process rights and his Eighth Amendment right to be free from cruel and unusual punishment.

Defendants, however, contend Plaintiff was not entitled to due process because he lost no liberty interest as a result of the disciplinary action he complains of and, in any event, Plaintiff indeed received due process. Defendants assert Plaintiff's rights were not violated and that the prison's regulations were followed in finding Plaintiff guilty of assault and in reclassifying Plaintiff to close custody.

*1.    Due Process Claims*

The Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "When a person asserts the deprivation of liberty without due process, the court first determines whether a protected liberty interest is at stake." *Parker v. Dunn*, No. 2:15-CV-340-MHT, 2018 WL 4189671, at *6 (M.D. Ala. Aug. 6, 2018), *report and recommendation adopted*, No. 2:15CV340-MHT, 2018 WL 4186402 (M.D. Ala. Aug. 31, 2018) (citing *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). "If an interest giving rise to procedural protections is at stake, the court determines whether the process employed was adequate to

protect that interest." *Id*. In order "[t]o determine what process is due, the court applies a three-part framework based on *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), that balances (1) the private interest affected, (2) the risk of erroneous deprivation and value of additional or substitute safeguards, and (3) the government's interest." *Id*. (citing *Wilkinson*, 545 U.S. at 224-25).

The law is settled that an inmate in the Alabama prison system has no constitutionally protected interest in the procedure affecting his classification because the resulting restraint, without more, does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Further, settled law holds that prison administrators are accorded wide deference in determining the policies and procedures for handling inmate populations, and federal courts rarely interfere in such discretionary decisions. *See generally Sweet v. South Carolina Department of Corrections*, 529 F.2d 854, 859 (4th Cir. 1975) (en banc) (describing federal court's deference to prison administrators and all administrative matters unless the condition rises to the level of a constitutional violation).

> [T]he Supreme Court has identified two circumstances in which a prisoner, an individual already deprived of his liberty in the ordinary sense, can be further deprived of his liberty such that due process is required. "The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. *See Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); *see, e.g., Vitek v. Jones*, 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital). The second is when the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.' *Sandin*, 515 U.S. at 484, 115 S.Ct. at 2300; *see, e.g., Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory 'good-time credits' without due process); *cf. Dudley v. Stewart*, 724 F.2d 1493, 1497-98 (11th Cir. 1984) (explaining how the state creates liberty interests). In the first situation, the liberty interest exists apart from the state; in the second situation, the liberty interest is created by the state.

*Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999).

The Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement. *Sandin*, 515 U.S. at 485-486 (observing that disciplinary confinement of inmate in segregation does not implicate a constitutionally protected liberty interest); *Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005) (holding that "the punishments [inmate] suffered because of his disciplinary conviction (demotion in status, segregation, and transfer) raise no due process concerns."); *see also Meachum*, 427 U.S. at 225 (finding no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any

of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose."). Moreover, an inmate in the Alabama prison system has no constitutionally protected interest in the privileges bestowed upon him or confinement in the least restrictive prison environment because the resulting restraints are not so severe that they exceed the sentence imposed upon him. *Sandin*, 515 U.S. at 485 (finding "[d]iscipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law."). In addition, a temporary denial of privileges does not impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Thus, the deprivations imposed upon Plaintiff did not "exceed the sentence [imposed by the trial court] in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force." *Id.* This Court must therefore determine whether the actions about which Plaintiff complains involve the deprivation of a state-created liberty interest as defined by the standard set forth in *Sandin*.

As the Supreme Court explained:

*Sandin* involved prisoners' claims to procedural due process protection before placement in segregated confinement for 30 days, imposed as discipline for disruptive behavior. *Sandin* observed that some of our earlier cases, *Hewitt v. Helms*, 459 U.S. 460, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), in particular, had employed a methodology for identifying state-created liberty interests that emphasized "the language of a particular [prison] regulation" instead of "the nature of the deprivation." *Sandin*, 515 U.S., at 481, 115 S.Ct. 2293. In *Sandin*, we criticized this methodology as creating a disincentive for States to promulgate procedures for prison management, and as involving the federal courts in the day-to-day management of prisons. *Id.*, at 482-483, 115 S.Ct. 2293. For these reasons, we abrogated the methodology of parsing the language of particular regulations.

"[T]he search for a negative implication from mandatory language in prisoner regulations has strayed from the real concerns undergirding the liberty protected by the Due Process Clause. The time has come to return to the due process principles we believe were correctly established in and applied in *Wolff* and *Meachum*. Following *Wolff*, we recognize that States may under certain circumstances create liberty interests which are protected by the Due Process Clause. But these interests will generally be limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*, at 483-484, 115 S.Ct. 2293 (citations and footnote omitted).

After *Sandin*, it is clear that the touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of regulations regarding those conditions but the nature

of those conditions themselves "in relation to the ordinary incidents of prison life." *Id.*, at 484, 115 S.Ct. 2293.

*Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

Applying the *Sandin* inquiry, the temporary loss of canteen, telephone, and visiting privileges and the recommendation for disciplinary segregation and custody level review, "though concededly punitive, do[ ] not represent a dramatic departure from the basic conditions" of the sentence imposed upon Plaintiff. 515 U.S. at 485. While Defendants assume, however, that Plaintiff did not have a protected liberty interest in avoiding close custody for 30 months, this assumption is not consistent with Eleventh Circuit law. *See Parker*, 2018 WL 4189671, at *6 n. 7. "[A]ssuming Plaintiff's close custody was an atypical and significant hardship in relation to the ordinary incidents of prison life sufficient to create a liberty interest triggering due process protection, an analysis of the three *Matthews* factors leads to the conclusion that Defendants are entitled to qualified immunity on the question of whether Plaintiff received the process due to him." *Id.*

"The first *Matthews* factor—Plaintiff's private interest in being free from erroneous placement in close custody—weighs in favor of additional protections but 'must be evaluated, nonetheless, within the context of the prison system and its attendant curtailment of liberties.'" *Id.* at *7 (citing *Wilkinson*, 545 U.S. at 225) (addressing the first *Matthews* factor). As to the second factor, "the procedures in place and probable value of additional or alternative safeguards adequately addressed the risk of Plaintiff's erroneous placement in close custody because Plaintiff received advanced written notice of [his disciplinary and reclassification hearings], an opportunity to call witnesses on his behalf and to ask questions, a written statement by the hearing officer listing the reasons for the [discipline and reclassification] and describing the evidence on which the officer relied, and a written summary of the [discipline and reclassification decisions]." *Id.* "[N]otice of the factual basis leading to consideration for [maximum security prison] placement and a fair opportunity for rebuttal ... are among the most important procedural mechanisms for purposes of avoiding erroneous deprivations." *Id.* (quoting *Wilkinson*, 545 U.S. at 225-26) (addressing the second *Matthews* factor) (citations and internal omitted). The third factor – the government's interest in the prison context – "is a dominant consideration." *Id.* (quoting *Wilkinson*, 545 U.S. at 227) (internal quotations omitted).

Well-recognized is that "[p]rison officials' 'first obligation' must be to ensure safety at the institution," and while Plaintiff disputes that he assaulted Smith, the overwhelming evidence on the record indicates that he did assault Smith. *See id.* (citing *Wilkinson*, 545 U.S. at 227).

Thus, based on a balancing of the *Matthews* factors under existing precedent, the decision to place Plaintiff in close custody following his disciplinary hearing satisfied due process requirements.

*See id.* (citing *Wilkinson*, 545 U.S. at 228-29; *see also Superintendent v. Hill*, 472 U.S. 445, 454 (1985)) (holding procedural due process is satisfied where there is "some evidence" in the record to support a finding of guilt of a disciplinary violation)).[4]  Critically, "to overcome Defendants' qualified immunity defense, it is Plaintiff's burden to show that in [2017 and 2018] it was clearly established law in this circuit that Defendants' procedures to safeguard Plaintiff's interest in not being assigned to and kept in close custody violated the Due Process Clause." *Id.* (citing *Gaines*, 871 F.3d at 1208) (holding that plaintiff must show that a defendant had "fair warning" that the act was unconstitutional).  Plaintiff points to no binding precedent in which a disciplinary and classification decision, process, or review similar to the one in Plaintiff's case was declared unconstitutional.

Plaintiff nonetheless maintains Defendants acted capriciously and arbitrarily in finding him guilty of assault and then placing him in close custody.  This claim entitles Plaintiff to no relief.  To successfully state a due process claim regarding Defendants' classification of him, Plaintiff must demonstrate Defendants' conduct or actions in subjecting him to close custody was done "maliciously or in bad faith."  *Hendking v. Smith*, 781 F.2d 850, 852 (11th Cir.1986) (holding that a classification system contains no inherent constitutional invalidity, but becomes constitutionally offensive only if "the regulation is administered maliciously or in bad faith.").

Defendant McKee recommended Plaintiff be reviewed for an increase in his security level based on his conduct against Smith on November 13, 2017.  Plaintiff received notice of the pending reclassification and attended a reclassification hearing.  To the extent Plaintiff's claim reflects his disagreement with prison officials' determination that he met the ADOC's classification criteria for an

---

[4]     ADOC's Administrative Regulation Number 403 ("Regulation") establishes the responsibilities, policies, and procedures for inmate violations. Doc. 38-11. This Regulation was in force at the time Plaintiff was disciplined for the high-level violation of assault on an inmate. *See id.* Also, in force at the time, were the Regulation's possible sanctions for high-level violations, including confinement to disciplinary segregation and recommended custody review. Doc. 38-11 at 23. Specifically, in accord with due process and prison regulation: (1) Plaintiff was properly served the disciplinary report and charges within ten working days after an investigation (Doc. 38-11 at 3-4; *see also* Doc. 38-6 at 5); (2) Plaintiff was informed of his right to present oral or written statements at the hearing and to present written questions for the witnesses (Doc. 38-11 at 5; *see also* Doc. 38-6 at 5); (3) Plaintiff's three witnesses were accurately identified on the report (Doc. 38-11 at 5; *see also* Doc. 38-6 at 5); (4) Plaintiff attended the hearing, testified in his defense, and his three witness statements were provided to Defendant McKee, the Hearing Officer (Doc. 38-11 at 5-6; *see also* Doc. 38-6 at 6); (5) Plaintiff provided questions for the arresting officer and witnesses (Doc. 38-11 at 6; *see also* Doc. 38-6 at 6); (6) the arresting officer testified and this testimony was recorded on the disciplinary report (Doc. 38-11 at 9; *see also* Doc. 38-6 at 6); (7) because the arresting officer used a confidential source, Defendant McKee, determined: (a) the source was used to times before, (b) the source proved truthful in the past, (b) the source was present at the time of the incident, (d) and the source identified Plaintiff as the suspect (Doc. 38-11 at 9-10; *see also* Doc. 38-6 at 6); (8) Plaintiff was informed why his witnesses were not called (Doc. 38-11 at 10; *see also* Doc. 38-6 at 6); (9) Defendant McKee made findings of fact (Doc. 38-11 at 6; *see also* Doc. 38-6 at 6); and (10) Plaintiff was provided a copy of the disciplinary report and recommended sanctions following Defendant Cooks' approval. Doc. 38-11 at 6; *see also* Doc. 38-6 at 7.

increase in his custody level, such disagreement does not make their decision arbitrary or capricious. Further, Plaintiff presents no evidence indicating that any defendant or other correctional official engaged in arbitrary or capricious action by recommending him for a higher custody level. To the extent Plaintiff asserts Defendants fabricated evidence of the assault, this conclusory and threadbare assertion is contradicted by the sworn affidavits of Agent William Favor and Defendants McKee, Headley, Cooks, Ollison, and Baggett. See Docs. 38-1, 38-3, 38-4, 38-5, 38-6, and 38-7. The Court, therefore, concludes that Defendants' conduct in relying on the negative behavior in which he engaged on November 13, 2017, to recommend him for a custody increase was "not arbitrary and capricious, but reasonable and appropriate." *Hendking*, 781 F.2d at 852.

To the extent Plaintiff asserts his return to close custody following an erroneous recommendation to reduce Plaintiff's custody to "medium/general population," in September 2018 violated his due process rights, as Defendant Baggett explained in her sworn affidavit, she failed to note the victim of Plaintiff's assault died. Plaintiff was then provided notice and a hearing on the return to close custody. As such, for the reasons set forth above, the return to close custody was not arbitrary and capricious. Because Plaintiff's allegations fail to demonstrate a due process violation, Defendants are entitled to qualified immunity on Plaintiff's due process claim.

2.      *Eighth Amendment Claim*

In connection with Plaintiff's Eighth Amendment claim, Plaintiff contends Defendants used the prison disciplinary and classification process "to conceal the fact that ADOC Officers assaulted and killed [Smith]." Doc. 6 at 3. Plaintiff contends, being placed in solitary confinement for "over 650" days for approximately 24 hours each day, amounts to cruel and unusual punishment. Doc. 46 at 11-12.

"The Eighth Amendment 'set[s] limits on the treatment and conditions that states may impose on prisoners.'" *Quintanilla v. Bryson*, 730 F. App'x 738, 746 (11th Cir. 2018) (quoting *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1571 (11th Cir. 1985)). "Conditions must not involve the wanton and unnecessary infliction of pain, nor may they be grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "But conditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id*. "[T]he Eighth Amendment is concerned with both the 'severity' and the 'duration' of the prisoner's exposure to. . . ." his conditions of confinement. *See Chandler v. Crosby*, 379 F.3d 1278, 1295 (11th Cir. 2004). "That is, '[a] condition which might

16

not ordinarily violate the Eighth Amendment may nonetheless do so if it persists over an extended period of time.'" *Id.* (citation omitted).

"An Eighth Amendment claim includes an objective and a subjective component." *Parker*, 2018 WL 4189671, at *8 (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "To show the objective component, 'the deprivation alleged must be, objectively, sufficiently serious.'" *Id.* (quoting *Farmer*, 511 U.S. at 834). In other words, "[t]he inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (quoting *Farmer* 511 U.S. at 834) (internal quotations omitted). "Only actions which deny inmates 'the minimal civilized measure of life's necessities' are grave enough to establish constitutional violations." *Id.* (quoting *Rhodes*, 452 U.S. at 347). "*Some* conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise— for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson v. Seiter*, 501 U.S. 294, 304-05 (1991) (citations omitted). "Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.*

Regarding a prison official's subjective awareness, the "state of mind is one of 'deliberate indifference' to inmate health or safety." *Parker*, 2018 WL 4189671, at *9 (quoting *Farmer*, 511 U.S. at 832) (citation and internal quotations omitted). "Deliberate indifference means 'the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference ... The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.' ... [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* (quoting *Farmer*, 511 U.S. at 837-38; *see also Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("[P]roof that the defendant should have perceived the risk, but did not, is insufficient.")) (internal quotations omitted). "The conduct at issue 'must involve more than ordinary lack of due care for the prisoner's interests or safety.... It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.'" *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986); *see also Wilson*, 501 U.S. at 305 (holding that "mere negligence" does not constitute deliberate indifference)) (internal quotations omitted).

The Court concludes that summary judgment is due to be granted in favor of Defendants on Plaintiff's claimed Eighth Amendment violation. The Constitution does not mandate that prisons be comfortable, *Rhodes*, 452 U.S. at 349, and "a prisoner's mere discomfort, without more, does not offend the Eighth Amendment." *Chandler*, 379 F.3d at 1296. While the conditions alleged by Plaintiff may, at times, have been uncomfortable, inconvenient, unpleasant, or objectionable, he has not shown that they denied him the minimal civilized measure of life's necessities, deprived him of a single human need, or subjected him to a wanton and unnecessary infliction of pain. *Wilson*, 501 U.S. at 298-299; *Rhodes*, 452 U.S. at 349 (quotation marks and citation omitted) (finding that "routine discomfort is part of the penalty prisoners may pay for their offenses, and prisoners cannot expect the amenities, conveniences, and services of a good hotel.").

Critically, there is no evidence in the record suggesting Defendants had any knowledge that Plaintiff was suffering physically or emotionally due to his confinement in close custody. As previously stated, Defendants' lack of knowledge of a risk, even of a substantial risk, bars Plaintiff's claims. *See Farmer*, 511 U.S. 837-38. The record includes no evidence showing any named Defendant was aware of unsafe or cruel conditions or that they recklessly or deliberately disregarded them. "The record regarding the conditions in close custody…does not create a genuine issue as to whether Defendants denied Plaintiff the minimal civilized measure of life's necessities or subjected him to a wanton and unnecessary infliction of pain." *Parker*, 2018 WL 4189671, at *9 (citing *Rhodes*, 452 U.S. at 347; *Farmer*, 511 U.S. at 838; *cf. Brooks v. Warden*, 800 F.3d 1295, 1305 (11th Cir. 2015) (discussing circumstances that deny adequate sanitation and hygiene requirements for inmates)). Consequently, Plaintiff has failed to meet his burden of showing Defendants committed a violation of a constitutional right, and t h e y are entitled to qualified immunity on his Eighth Amendment conditions of confinement claim.

## V.  Plaintiff's November 4, 2021, Motions (Docs. 50, 51) and November 15, 2021, Affidavit

On November 4, 2021, the Court received Plaintiff's two motions docketed as Plaintiff's "Motion to Amend Pursuant to Rule 15(a)(2)" (Doc. 50), and Plaintiff's "Motion to Amend New Defendants to Complaint." Doc. 51. Plaintiff seeks to add Defendant W.D. Favor ("Favor") and assert additional claims against, now retired, Defendant Cooks. As to Favor, Plaintiff asserts, *inter alia*, this individual, in 2017, "denied the Plaintiff due process and subjected the Plaintiff to cruel and unusual punishment when Defendant Favor acted with deliberate indifference by intentionally manipulating the evidence against the Plaintiff to falsely accuse the Plaintiff of causing the death of Billy Smith…to cover up that Billy Smith death was caused by ADOC's prison officials who assaulted and abused Mr.

Smith on November 13, 2017, and denied getting Mr. Smith medical treatment for his injuries that resulted in Mr. Smith later dying at Jackson Hospital." Doc. 50 at 2. As to Defendant Cooks, Plaintiff asserts this defendant acted with deliberate indifference when she failed to supervise her subordinates "who subjected Plaintiff to cruel and unusual punishment by placing the Plaintiff inside a condemned cell that had plumbing problems in which it was known to the Defendant that the toilet was constantly backing-up whenever either the Plaintiff used it or whenever the inmate in the next cell flushed his toilet the urine and feces would come up in the Plaintiff toilet exposing the Plaintiff to another human waste." *Id*. at 2-3. For relief, Plaintiff seeks over one million dollars in damages against Defendant Cooks and Favor. Doc. 50 at 4-5.

On November 15, 2021, Plaintiff submitted an affidavit in support of his November 4, motions. Doc. 52. In his affidavit, Plaintiff again raises conditions of confinement claims, but clarifies, his claims arose in several facilities over the course of several years. *Id*. Plaintiff contends, in 2017, due to the poor conditions in segregation, he threatened suicide. *Id*. at 2. Plaintiff maintains he was subjected to poor conditions of confinement in ECF, DCC, KCC, and SCCF in 2017 and 2018. *Id*. at 2-3. Plaintiff also asserts he informed unknown staff and officers as to his conditions and declining mental health, but that these individuals allegedly did nothing in hopes of "covering up" the murder of Smith at ECF. *Id*. Plaintiff further clarifies, he discovered Favor's alleged conspiracy to cover-up the killing of Smith in May 2018, approximately 6 months prior to commencing the pending civil action. *Id*. at 3. Plaintiff asserts, he suffered emotionally due to being accused of murdering Smith and being confined in poor conditions while in segregation. *Id*. Plaintiff explains, while he has been released from solitary confinement, he now suffers from paranoia. *Id*. at 6. Plaintiff asserts all Defendants conspired against him to cover-up the murder of Smith. *Id*. at 7.

Initially, the Court notes, Plaintiff requests that this case be reopened. Doc. 61 at 2. This case is currently pending on Defendants' long-ripe motion for summary judgment. Plaintiff's request to reopen this case is, therefore, legally frivolous.

Insofar as Plaintiff seeks to amend his complaint, a plaintiff may amend his compliant "once as a matter of course … before a responsive pleading is served …" Fed. R. Civ. P. 15(a). As Plaintiff has already submitted an amended complaint, and Defendants have filed the special report, Plaintiff must receive permission from the Court to amend his complaint. Under Fed. R. Civ. P. 15(a), leave of court to amend is required, but should be "freely given when justice so requires." "Leave to amend may be denied for 'apparent or declared reasons,' such as 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the amendment, futility of the amendment, etc.'"

*Phillips v. May*, No. 16-CV-14032, 2018 WL 11247163, at *1 (S.D. Fla. Sept. 21, 2018) (citing *Foman v. Davis*, 371 U.S. 178 182 (1962); *Best Canvas Products & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 622-23 (11th Cir. 1983); *J.D. Marshall Int'l., Inc. v. Redstart, Inc.*, 935 F.2d 815, 819 (7th Cir. 1991)). The policy underlying Rule 15(a) is liberal, but the purpose of generously allowing amendment is to facilitate a proper decision upon the merits. *Dussouy v. Gulf Coast Investment Corporation*, 660 F.2d 594, 598 (5th Cir. 1981); *Shipner v. Eastern Air Lines, Inc.*, 868 F.2d 401, 407 (11th Cir. 1989). Thus, a "substantial reason" should exist to support the denial of leave to amend.

In this case, permitting Plaintiff to amend his complaint to add additional claims and a new defendant would not facilitate a decision on the merits and should be disallowed due to the delay in proceedings and continued altering of the claims. Here, the Court notes, this case was filed on November 16, 2018, and has been pending on the allegations asserted in Plaintiff's amended complaint since December 19, 2018. While the Court acknowledges that the manslaughter charges against Plaintiff were dismissed in September 2021, Plaintiff asserts no reason as to why the claims asserted against Favor and Defendant Cooks could not have been asserted long before now. Notably, Plaintiff asserts, his claims against Favor stem from Favor's investigation into the circumstances surrounding Smith's death in 2017. Doc. 51 at 3, 10. Plaintiff also asserts, in his affidavit, that he learned of Favor's alleged wrongdoing approximately six months prior to filing this action. *See* Doc. 52 at 3. While unclear from the pleadings, it also appears that the conditions of confinement claim Plaintiff asserts against now-retired Defendant Cooks, relate to his cell conditions from several years ago.

In *Paschal v. Florida Public Employment Relations Commission*, 666 F.2d 1381 (11th Cir.), *cert. denied*, 457 U.S. 1109 (1982), the court found no abuse of discretion by a denial of leave to amend where the case was over a year old, discovery had closed, the motion to amend was not made until shortly before trial, and the amendment would have caused prejudice to defendants by a continuance of the trial. Denial of leave to amend was also sustained in *Addington v. Farmer's Elevator Mutual Insurance Company*, 650 F.2d 663 (5th Cir., Unit A), *cert. denied*, 454 U.S. 1098 (1981). The Court found that amendment was sought more than a year after filing suit, after a motion for summary judgment had been filed, and after discovery had ended. 650 F.2d at 667. Finally, denial of leave to amend was held to be not an abuse of discretion in *Local 472, etc. v. Georgia Power Company*, 684 F.2d 721 (11th Cir. 1982). Amendment was not justified, said the Court, because discovery had been completed and all defendants had filed motions for summary judgment.

Amendment also appears to be futile as to Plaintiff's claims asserted against Favor and his 2017-2018 investigation. These claims are not related to his underlying allegations from his amended complaint and are barred by the two-year period of limitations which governs 42 U.S.C. § 1983 claims.

All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought. *Wilson v. Garcia*, 471 U.S. 261, 275-76 (1985). Plaintiff's claims were brought in Alabama where the governing limitations period is two years. Ala. Code § 6-2-38; *Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483 (11th Cir. 1989) (en banc). Therefore, to have his claims heard, Plaintiff is required to bring them within two years from the date the limitations period began to run. *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008). Plaintiff not only failed to timely assert these claims, but he also provides no reason to toll the statute of limitations. The Court also notes, in his November 15, 2021, affidavit, Plaintiff seeks to assert a condition of confinement claim against unnamed defendants, while housed in several institutions of confinement. *See* Doc. 52. To the extent Plaintiff seeks to assert claims arising in different institutions of incarceration, he must file a separate cause of action against proper defendants.

This case has been ripe over two years, not an insignificant amount of time. Defendants have filed the special report, and the case is ready for summary judgment. There is no need to delay these proceedings further where Plaintiff's claims are years old and could readily have been asserted earlier in the proceedings. It was Plaintiff's choice to omit the claims asserted against Defendant Cooks and Favor from his case over a year ago, and he must live with the consequences of that decision. This case will never have resolution if Plaintiff continues to seek amendments to his complaint and continues to alter his claims and adding claims as his circumstances change. It is time to proceed with the existing claims from the 2018 amended complaint and move this case forward.

To the extent Plaintiff's allegations as to the alleged conditions of confinement are not barred by the applicable two-year statute of limitations, he may file a new complaint to assert these claims.

## VI.    CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. Defendants' motion for summary judgment (Doc. 38) be GRANTED.

2. Plaintiff's motions to amend (Docs. 50, 51) be DENIED, as discussed herein.

3. This case be DISMISSED with prejudice.

4. Judgment be ENTERED in favor of Defendants.

On or before **December 16, 2021,** the parties may file an objection to the Recommendation. Any objections filed must specifically identify the factual findings and legal conclusions in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. This Recommendation is not a final order and, therefore, it is not appealable.

Failure to file an objection to the proposed findings and recommendations in the Magistrate Judge's report shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall "waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 2nd day of December 2021.

/s/ Charles S. Coody
CHARLES S. COODY,
UNITED STATES MAGISTRATE JUDGE